UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
00-CV-2202(JMR/FLN)

| | | |
|---|---|---|
| Stan J. Leino | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| Lynda Nelson, Patrick Burns, Edward Cleary, Thomas Malone, Joanne DeLong, Gloria Esaw, John Murrin, and the Minnesota Lawyers Professional Responsibility Board | ) | |

This case has its origin in an investigation by the Minnesota Lawyers Professional Responsibility Board ("the Board") of the improper -- and occasionally illegal -- actions undertaken by plaintiff, Stan J. Leino. In the course of the Board's investigation, plaintiff stipulated that he improperly converted client retainers to his own use, forged documents to conceal that misappropriation, filed false police reports accusing his defrauded clients of burglarizing his office and kidnapping him, and mailed a threatening note to the state court judge assigned to hear his disciplinary proceedings with the intent of making it appear that the note originated with his former clients. Affidavit of Patrick Burns ("Burns Aff."), Ex. F at ¶ 4 (Stipulation for Discipline). Based on his stipulated misconduct, the Minnesota Supreme Court indefinitely suspended plaintiff from practicing law for a minimum of three years. <u>In re Petition for Disciplinary Action Against</u>

FILED
RICHARD D. SLETTEN, CLERK
AUG 22 2001
JUDGEMENT ENTERED AUG 22 2001
DEPUTY CLERK'S INITIALS

Stanley J. Leino, 609 N.W.2d 616 (Minn. 2000).

Following his suspension, the Board received reports that plaintiff was continuing to practice law under assorted false identities and immediately commenced proceedings to disbar him. After a hearing on the matter, the referee appointed by the Minnesota Supreme Court issued his Findings of Fact, Conclusions of Law, and Recommendation. The referee found these further allegations of unauthorized practice were supported, and recommended plaintiff's disbarment.[1] Burns Aff., Ex. J. Plaintiff instituted this action after the allegations of unauthorized practice surfaced, but before the hearing on the matter.

Against this sordid backdrop, and in the face of the pending disbarment proceeding, plaintiff foisted a 16-count complaint upon this Court seeking relief from his former clients (Joanne Delong and Gloria Esaw), the attorney who subsequently represented them (John Murrin), and various officers and employees of the Board (Lynda Nelson, Patrick Burns, Edward Cleary, and Thomas Malone), as well as the Board itself. Plaintiff's complaint purports to raise violations of his civil rights under state and federal law, violations of his right to privacy, and violations of criminal

---

[1]The referee found that plaintiff had committed other acts of misconduct, but because those allegations do not pertain to this matter, the Court will not discuss them here.

law.[2]

After reviewing the facts and arguments in this case, all of plaintiff's claims fail, and summary judgment is granted in favor of all defendants.[3] Further, as a sanction for bringing this wholly insubstantial action, and for further harassing his former clients and the attorney who attempted to protect their interests, plaintiff will be sanctioned pursuant to Rule 11 of the Federal Rules of Civil Procedure and under this Court's inherent powers.

I. The Rooker-Feldman Bar

The Court begins with considerations of comity, which call upon this Court to respect and defer to the judicial decisions of other courts. In matters of state-federal jurisprudence, these

[2]Serially stated, the Complaint asserts: (1) deprivation of civil rights under 42 U.S.C. § 1983; (2) conspiracy to interfere with civil rights under 42 U.S.C. § 1985; (3) failure to prevent the conspiracy to interfere with civil rights under 42 U.S.C. § 1986; (4) discrimination against the emotionally disabled under the Americans with Disabilities Act and the Minnesota Human Rights Act; (5) defamation; (6) injurious falsehood; (7) intentional infliction of emotional distress; (8) false imprisonment; (9) malicious prosecution; (10) intrusion into seclusion; (11) false light; (12) harassment and coercion; (13) witness tampering; (14) breach of contract; (15) restraint of freedom of association; and (16) public disclosure of private facts.

[3]Because plaintiff and defendants submitted supporting documentation pertaining to matters outside the pleadings, defendants' motions to dismiss are properly treated as motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 12(c).

considerations are expressed in the Rooker-Feldman doctrine.[4] The Rooker-Feldman doctrine bars a federal court from reexamining issues addressed by a state court of competent jurisdiction. Insofar as plaintiff's complaint rests on allegations offering an interpretation of the underlying facts different from those determined by the Minnesota Supreme Court and its duly appointed referee, plaintiff's redress -- if any -- lies in the state appellate process. The Rooker-Feldman doctrine bars his collateral attack on those determinations in this Court.

The Rooker-Feldman doctrine compels federal courts to give "the same preclusive effect to a state court judgment that the judgment would be given in courts of the rendering state." Fielder v. Credit Acceptance Corp., 188 F.3d 1031, 1034 (8th Cir. 1999). It encompasses not only claims actually adjudicated by state courts, but also those claims "inextricably intertwined" with them. Id. A claim is inextricably intertwined under Rooker-Feldman if it

---

[4]Although the same considerations of comity and federalism implicated in this case do, at times, implicate other abstention doctrines, such as Younger and Burford abstention, the Court does not find these doctrines controlling here. Younger abstention bars a federal Court from enjoining an ongoing state proceeding. Younger v. Harris, 401 U.S. 37 (1971). But, as plaintiff does not seek to enjoin the state disciplinary proceeding, Younger is not implicated. Burford abstention protects "complex state regulatory schemes from interference by federal courts." Kansas Public Employees Retirement System v. Reimer & Kroger Assoc., Inc., 77 F.3d 1063, 1071 (8th Cir. 1996). None of plaintiff's claims tread on the state's administrative proceedings. Rather, they require the Court to evaluate defendants' compliance with duties imposed by federal statutory and state tort law. As such, Burford abstention is also inapplicable. Id.

"succeeds only to the extent that the state court wrongly decided the issues before it [or] if the relief requested would effectively reverse the state court decision or void its ruling." Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995). The claims need not be identically named or pled; "federal plaintiffs cannot by artful pleading obtain a hearing of disguised state court appeals that would otherwise be subject to a Rooker-Feldman bar." Lemonds v. St. Louis County, 222 F.2d 488, 494 (8th Cir. 2000).[5]

The bulk of plaintiff's present claims rest on his reinterpretation of facts he previously stipulated were true and which were accepted by the state court. Under the Rooker-Feldman doctrine, this Court may not reexamine those issues -- they are simply foreclosed from review outside the state's normal appellate process. Thus, plaintiff's civil rights claims, as well as his statutory discrimination claims, are barred from consideration in this Court.[6]

---

[5]The presence of additional parties here, not present in the state proceeding, does not impact the Rooker-Feldman analysis. The Eighth Circuit Court of Appeals has determined the parties need not be identical for Rooker-Feldman's preclusive effect to apply, so long as the claims presented are "inextricably intertwined." Lemonds, 222 F.3d at 495.

[6]Plaintiff's restraint of freedom of association claim alleges discrimination on the basis of plaintiff's Native American heritage and emotional disabilities, as well as a failure of equal protection and due process. To the extent that plaintiff's rights under the First or Fourteenth Amendments have been violated by state actors, his redress is under the Civil Rights Act, 42 U.S.C. § 1983. The Court therefore does not address that claim separately from plaintiff's other civil rights and discrimination claims.

Those claims are premised on plaintiff's belief that he was treated unfairly by the Board because of his mental illness.[7] Plaintiff, however, stipulated and acknowledged his improper professional actions, including misappropriation of client funds. In normal circumstances, misappropriation alone would merit disbarment. In re Petition for Disciplinary Action Against Stephen C. Davis, 585 N.W.2d 373, 377 (Minn. 1998) (noting disbarment is the usual discipline for attorney misappropriation of client funds).

In plaintiff's case, rather than disbar him for his improper activities, the Minnesota Supreme Court only suspended him, explicitly noting that "more severe discipline is not warranted because of respondent's psychological condition." Leino, 609 N.W.2d at 617. Thus, plaintiff cannot show he was treated more harshly because of his mental illness; in point of fact, he was treated more leniently than precedent would otherwise dictate. The

[7]Although somewhat opaque, it appears from plaintiff's pleadings that he also believes he was deprived of his right to an attorney during the course of the Board's investigation, and was subjected to illegal searches of his property as various Board employees sought evidence relating to the ethics inquiry. It is settled law, however, that criminal safeguards do not apply to a disciplinary proceeding. See In the Matter of the Petition for Disciplinary Action Against William A. Peters, 332 N.W.2d 10, 16-17 (Minn. 1983); In the Matter of the Application for the Discipline of Gerald Hubert Hanratty, 277 N.W.2d 373, 375 (Minn. 1979). Thus, plaintiff cannot allege deprivation of civil rights on that basis. The Court also notes that plaintiff had a duty to cooperate with the Board's investigation, including producing any desired documents and allowing access to his office, computers, etc. See Minn. Law. Prof. Resp. R. 25.

Court is precluded by Rooker-Feldman from reexamining the Minnesota Supreme Court's evidentiary determinations regarding plaintiff's misconduct. Based on the facts as set forth by that court, and, indeed, as previously stipulated by plaintiff, the Court cannot discover any violation of plaintiff's civil rights.

Plaintiff's defamation claim is similarly flawed. His complaint alleges he was defamed by various statements made by his former clients, their attorney, and employees of the Board relating to his misappropriation of funds and other actions. But an absolute predicate for any defamation claim is that the statements be false. Bol v. Cole, 561 N.W.2d 143, 146 (Minn. 1997).[8] Here, however, the statements were true by plaintiff's own admissions. Those admissions have been accepted by the Minnesota Supreme Court; this Court cannot reconsider them here.

Plaintiff also complains he has been defamed by statements alleging he practiced under assorted pseudonyms after his suspension. Those allegations have been found true by the referee assigned to preside over plaintiff's disciplinary hearing; this Court may not trench on that determination

[8]The same requirement of falsity applies to plaintiff's action under the tort of injurious falsehood, and that claim fails for the same reason. See Lenscrafters, Inc. v. Vision World, Inc., 943 F. Supp. 1481, 1489 (D. Minn. 1996).

either.[9] The Rooker-Feldman doctrine bars any reconsideration of factual or legal issues previously addressed in the state proceeding.

II. Plaintiff's Other Claims

A number of plaintiff's claims rise from the Board's investigation, but do not call upon the Court to address factual or legal issues previously decided. The Court now turns its attention to those claims.

The Court looks first at plaintiff's assorted tort claims. Plaintiff alleges intentional infliction of emotional distress arising from acts undertaken by defendants in the course of the Board's investigation of his ethics violations. As part of an official investigation, those acts are entitled to immunity unless plaintiff can show malice. See Kelly v. City of Minneapolis, 598 N.W.2d 657, 664 (Minn. 1999).[10] "Malice in the context of official immunity means intentionally committing an act that the official

---

[9]Even if the Court could reconsider the truth or falsity of those statements, they are clearly protected by official immunity, as they were made by a public official in the course of his appointed duties. See Kelly v. City of Minneapolis, 598 N.W.2d 657, 664 (Minn. 1999).

[10]Although defendants Delong, Esaw, and Murrin are not clothed in the Board's and its officers' official immunity, the Court finds they are entitled to qualified immunity. Therefore, the Court considers statements made by Delong and Esaw (plaintiff's former clients) and Murrin (their attorney) concerning plaintiff's possible (and later admitted) misappropriation of their funds to have been "made upon a proper occasion, from a proper motive, and based upon reasonable or probable cause." Rudebeck v. Paulson, 612 N.W.2d 450, 453 (Minn. Ct. App. 2000).

has reason to believe is legally prohibited." Id. at 663. Accepting plaintiff's allegations as true, the Court finds, as a matter of law, that none of the actions of which he complains is illegal. Official immunity thus bars any recovery.[11]

Plaintiff's claims that defendants violated his right to privacy are similarly barred by official immunity. Plaintiff alleges he has been wronged on three bases: intrusion upon seclusion, public disclosure of private facts, and false light.[12] Each of these purported claims rests on defendants' actions in the course of the Board's ethics investigation, as well as upon the press release the Board issued concerning the outcome of the disciplinary hearing. Because those actions were undertaken pursuant to defendants' official duty, they are covered by immunity, absent a showing of malice, which plaintiff has not

[11]Official immunity also bars plaintiff's false imprisonment claims. Moreover, the facts recited by plaintiff do not even assert a cognizable claim of false imprisonment. Plaintiff recites defendants Burns and Nelson "interrogated" him at the Board's office and at his own office and "insisted" he remain in his office while they searched his office and computer files. Plaintiff does not claim he was either unable to leave, or forced to remain. He merely states that defendants told him he had to stay and cooperate. The Court, again, finds that as a matter of law, these assertions do not rise to a colorable claim of false imprisonment.

[12]The Minnesota Supreme Court has explicitly declined to recognize the tort of false light publicity. Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231, 235 (Minn. 1998). Even if it had recognized this tort, it requires that plaintiff be placed before the public in a false light. Id. at 233. Plaintiff, himself, conceded in the state proceeding that the allegations of misconduct were true. Thus, even if false light were recognized as a tort in Minnesota, plaintiff has failed to assert a *prima facie* case.

offered.

Moreover, each tort requires the disclosure of private facts. But facts related to plaintiff's suspension and the investigation of his unauthorized practice of law following suspension are not private facts; they are public facts relating to his professional life. Disclosure of the outcome of disciplinary actions is required by Minnesota law. Minn. Stat. § 13.41 subd. 5. Plaintiff acknowledged as much in his stipulation with the Board. Burns Aff., Ex. B at ¶ 2 ("Respondent understands that upon the filing of this stipulation and the petition, this matter will be of public record."). Thus, plaintiff has failed to present a prima facie case of any invasion of his privacy.

Of plaintiff's remaining allegations, only the breach of contract claim need be addressed.[13] Plaintiff avers that the Fridley Police Department and the St. Louis County Sheriff's Office promised him that if he agreed to withdraw his burglary and kidnapping complaints, he would suffer no adverse consequences.

---

[13]Plaintiff cannot succeed on his malicious prosecution claim because a prima facie case requires him to show the underlying suit terminated in his favor. Williamson v. Guentzel, 584 N.W.2d 20, 23 (Minn. Ct. App. 1998). As plaintiff admitted the allegations in the underlying suit and was disciplined, he cannot make such a showing. Plaintiff cannot succeed on his claims of harassment, coercion, and witness tampering for the simple reason that those are not acknowledged bases for civil claims. Although each is a crime under Minnesota law, none allows for a private, civil, cause of action. Unless a criminal statute specifically provides for a civil cause of action, no such action is created. Larson v. Dunn, 460 N.W.2d 39, 47 n.4 (Minn. 1990).

Plaintiff's theory is that these officers' purported promises created a contract binding on the Board, and the Board breached this contract when it pursued disciplinary proceedings against him. Plaintiff's theory is fundamentally flawed.

As an initial matter, neither the Fridley Police Department nor the St. Louis County Sheriff's Office have the power to bind other, independent agencies, whether state or local. It is black letter law that a party to a contract can only bind itself -- not a third party. Thus, assuming either law enforcement agency entered into a contract with plaintiff, that contract pertained only to actions taken by those agencies.[14]

Second, it is established law that the Board is not a law enforcement agency, and its proceedings are not criminal in nature. See In the Matter of the Petition for Disciplinary Action Against William A. Peters, 332 N.W.2d 10, 16-17 (Minn. 1983). Thus, even if all law enforcement agencies in the state were somehow bound by

---

[14]Whether individual police officers could contractually obligate a state or municipality not to pursue or prosecute a criminal matter is highly dubious. The case plaintiff cites for that proposition is wholly inapposite, dealing with the binding effect of a plea agreement. The Court has serious doubts whether an officer would have the power to bind a municipality. See Morris v. Perpich, 421 N.W.2d 333 (Minn. Ct. App. 1988) (noting that even apparent authority to contract is insufficient unless actual authority also exists); see also Minn. Stat. § 373.02 (mandating that only contracts entered into by the county board are valid and binding on a county). The Court also entertains serious doubts whether a "contract" which promises immunity from violations of the law would survive a challenge asserting it is void for violating public policy.

the promise of the Fridley Police Department or the St. Louis County Sheriff's Office, the Board would still be free to act.

Finally, even if plaintiff's "contract" were somehow valid, he has not shown a breach. The law enforcement agencies promised not to prosecute or report him to the Board. Plaintiff has not been criminally prosecuted, and he offers no evidence showing either the Fridley Police Department or the St. Louis County Sheriff's Office reported him to the Board. Rather, the Board's investigation was initiated by defendants, Delong and Esaw, who each filed complaints regarding plaintiff's actions. Plaintiff does not allege, nor could he, that Delong and Esaw are bound by any putative contract with law enforcement in the State of Minnesota as a whole. Thus, plaintiff has failed to show an actionable breach of contract.

III. Sanctions

Finally, this Court invokes its power under Rule 11, as well as its inherent power to maintain the integrity of its proceedings, and imposes a financial sanction on plaintiff. Under Rule 11, even parties proceeding pro se are charged with averring to the Court that their pleadings are not presented for any improper purpose, are warranted by existing law, and are supported by evidence. Fed. R. Civ. P. 11. Plaintiff, a former attorney, cannot be held to a lower standard. Yet in each and every particular, plaintiff has failed to adhere to the dictates of Rule 11. His shotgun complaint contains absurd factual allegations, nonexistent legal claims, and

serves no purpose but to further harass innocent parties and public servants.

Plaintiff has admitted in a court of law that he has taken money from those who entrusted him to perform their legal work. He has made false claims against them, and has obstructed the legal process by falsely claiming to have been the victim of crime. He has basely claimed his own wronged clients committed crimes against him. And he has leveled wholly insubstantial claims against those whose only obligation was to protect the public from precisely those acts which he has, himself, admitted. In doing many of these acts, he has caused his former clients to incur additional costs to defend themselves against his base and baseless allegations, and has harassed those who have attempted to make his behavior cease.

Such acts more than justify the imposition of a financial penalty, and the Court finds it proper to impose such a sanction. Therefore, plaintiff will pay and bear any and all costs, fees, and legal services expenses borne by his two former clients and the lawyer they later secured to remedy his wrongful acts. Further, he will bear all of the same costs and fees they have incurred to defend themselves against this baseless lawsuit. In this regard, each person to whom plaintiff owes these fees and costs shall submit an affidavit setting forth their respective sums no later than 30 days from the date of this Order.

IV. Conclusion

Plaintiff's lengthy complaint amounts to nothing more than an ill-founded collateral attack on the state disciplinary proceeding and on all who participated in it. Legally and factually, plaintiff's variegated claims lack support and fail to raise any triable issue. Plaintiff's complaint is wholly without merit and eminently deserving of the sanction of this Court. Accordingly, IT IS ORDERED that:

1. The motion to dismiss by defendants Nelson, Burns, Cleary, Malone, and the Minnesota Lawyers Professional Responsibility Board [Docket No. 2] is granted.

2. Defendant Murrin's motion to dismiss [Docket No. 9] is granted.

3. Defendant Murrin's motion for Rule 11 sanctions [Docket No. 12] is granted.

4. Pursuant to Rule 11 and the Court's inherent authority to prevent the abuse of the legal process and to protect the integrity of the legal system, the Court imposes the further sanction described in Section III, above.

5. Plaintiff's complaint is dismissed in its entirety with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 21st, 2001

JAMES M. ROSENBAUM
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500